1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RACHEL C. B.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C23-1156-SKV

ORDER REVERSING THE
COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of her application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for an award of benefits.

## BACKGROUND

Plaintiff was born in 1971, has a high school education, and most recently worked as a graphic designer and photo editor.  AR 953.  Plaintiff was last gainfully employed in 2019.  AR 951.

In November 2016, Plaintiff applied for benefits, alleging disability as of August 23, 2016.  AR 70-88.  Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 1014-25.  After the ALJ conducted a hearing in May 2019, the

ALJ issued a decision finding Plaintiff not disabled.  AR 958-82.  The Appeals Council denied

Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.

AR 983.  Plaintiff appealed the final decision of the Commissioner, and on August 26, 2021, this

Court reversed the ALJ's decision and remanded the case for reconsideration of the medical

opinions.  AR 989.  On remand, Plaintiff amended her alleged onset date of disability to

November 13, 2019.  AR 908.  In turn, after a different ALJ conducted a second hearing on

March 16, 2023, the second ALJ issued a decision finding Plaintiff not disabled.  AR 905-39.

Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 1.  The parties

consented to proceed before the undersigned Magistrate Judge.  Dkt. 3.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since November 13, 2019, the amended alleged onset date.

**Step two**:  Plaintiff has the following severe impairments: hypothyroidism status post thyroid cancer surgery; neuropathy; cervical and lumbar degenerative disk disease; obesity; and depressive disorder.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity**:  Plaintiff can perform light work except she cannot climb ladders, ropes, or scaffolds.  She can understand, remember, and carry out simple, work-related instructions in a predictable, routine work setting.  She can reach overhead only occasionally.

**Step four**:  Plaintiff cannot perform past relevant work.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 911-12, 915, 926-27.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

**LEGAL STANDARDS**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citation omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

**DISCUSSION**

Plaintiff argues the ALJ erred in step two findings, misevaluated three medical opinions, and erred in assessing Plaintiff's residual functional capacity (RFC). The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

A.        **The ALJ Erred at Step Two**

Plaintiff contends the ALJ misevaluated her postural orthostatic tachycardia syndrome (POTS), chronic fatigue, and fibromyalgia impairments at step two.  Dkt. 8 at 4-5.  The Commissioner argues the law of the case doctrine precludes Plaintiff's argument.  Dkt. 10 at 3.  "[T]he law of the case doctrine generally prohibits the court from considering an issue that has already been decided by that same court or a higher court in the same case."  *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).  The Ninth Circuit has held that this doctrine applies to Social Security administrative remands from a federal district court in the same way they would apply in any other case; "is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust."  *Id.*  The Commissioner's argument is unavailing because the evidence on remand significantly exceeds the record the ALJ evaluated in the 2019 decision.[3]  *Compare e.g.*, AR 428, 574, 708, 736, 772, 791, 832, 842, 847, 854, 875 (relevant prior records), *with e.g.*, AR 1343, 1354, 1550, 1569, 1572, 1781, 2072, 2074, 2075, 2079, 2084, 2086, 2090, 2091, 2094, 2095, 2232, 2234, 2250, 2266, 2307, 2746, 3071, 3074, 3286, 3777, 4373, 4417, 4958, 5034, 5039 (additional relevant evidence from consolidated application); *see also Camarena v. Saul*, 2021 WL 5905720 (9th Cir. Dec. 14, 2021) (precluding application of the law of the case doctrine where Plaintiff filed a subsequent claim that was consolidated on remand because the ALJ considered additional evidence on remand).  The Court thus turns to the remaining challenges with the ALJ's step two findings.

At step two, Plaintiff has the burden to show that (1) she has a medically determinable impairment, and (2) the impairment is severe.  *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S.Ct.

---

[3] Plaintiff submitted applications for SSI and DIB in 2020, which were consolidated with the case on remand before the ALJ in 2023.  AR 1159-68.

2287, 96 L.Ed.2d 119 (1987).  The step two inquiry is a "de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  An impairment is "not severe" if the evidence establishes the impairment is a slight abnormality that has no more than a minimal effect on an individual's ability to work.  *Id.*  The Ninth Circuit has consistently held that an ALJ's error in finding a claimant's impairment is not severe at step two is harmless if the ALJ considers the resulting limitations later in the process.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 683–84 (9th Cir. 2005).

In this case, the ALJ recognized Plaintiff's severe impairments, including hypothyroidism status post thyroid cancer surgery; neuropathy; cervical and lumbar degenerative disk disease; obesity; and depressive disorder.  AR 911.  However, the ALJ overlooked substantial evidence of Plaintiff's other impairments, including POTS, chronic fatigue, and fibromyalgia and failed to consider how the combination of those impairments affected her ability to do basic work activities.  The ALJ explained Plaintiff's POTS, chronic fatigue, and fibromyalgia were not severe impairments because she "reported symptoms only intermittently," her symptoms were "stable and controlled," and "her clinical presentation was typically normal, with little to no clinical evidence of fatigue, dizziness, or balance problem[s] indicative of deficits in mental or musculoskeletal function."  AR 911.

In contrast to the ALJ's findings, the objective evidence in the record established that Plaintiff experienced lightheadedness and dizziness (AR 832, 847, 854, 1550, 1572, 2072, 2075, 2079, 2084, 2086, 2090, 2095, 2232, 2746, 3286); gastrointestinal symptoms (AR 847, 875, 1343, 2072, 2084, 2090, 2094, 2746, 4958, 5034, 5039); fatigue and insomnia (AR 428, 574, 708, 736, 842, 847, 854, 1781, 2074, 2084, 2090, 2094, 2232, 2746, 3071, 3074, 4417); cognitive issues, including brain fog and memory loss (AR 428, 574, 736, 842, 854, 1354, 2072,

2091, 2095, 2250, 2266, 2746, 3777, 4373); and widespread chronic pain (AR 708, 772, 791, 842, 854, 1343, 1569, 2072, 2074, 2084, 2090, 2234, 2307, 2746, 5034, 5039). Those symptoms inhibited her ability to do basic work activities without becoming fatigued or dizzy and experiencing cognitive issues; or experiencing pain flareups which would require her to take more breaks, leave work early, and/or miss work altogether. She testified she could not walk a mile without multiple breaks; she needed to elevate her feet regularly; her concentration suffered when she was tired or in pain; it took a half hour for her to clear her brain fog and leave bed in the morning; and she had issues being in a stagnant position or sitting for very long. AR 944-50. She also reported that she lost her previous job because of these limitations. AR 1021, 1259, 3776, 3782.

This evidence establishes that the combination of Plaintiff's impairments is more than a "slight abnormality" and has more than a "minimal effect on her ability to do work," which is all she needed to prove to establish severity at step two. Thus, the ALJ's finding that the combination of Plaintiff's other impairments was "not severe" is not supported by substantial evidence. The Commissioner's argument that Plaintiff has not established prejudicial error because the ALJ "expressly considered" her symptoms is unavailing. Dkt. 10 at 6 (citing AR 915-16). The ALJ summarized Plaintiff's reported symptoms and dismissed them with a generic statement that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent" with the longitudinal record. AR 916. This is not a legally sufficient reason to discredit Plaintiff's testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014). Consequently, the ALJ failed to consider how the combination of her other impairments – and resulting incapacitating fatigue, cognitive impairment, and aggravated pain – affected her ability to perform work activities.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**B.      The ALJ Erred in Adverse Credibility Findings**

The Commissioner argues that Plaintiff waived the right to challenge the ALJ's step two findings and evaluation of medical opinions as related to her credibility by not raising it in her opening brief, despite her argument relying heavily on her subjective reports.  Dkt. 10 at 4, 6, 10-11, 17.  Plaintiff contends that she does challenge the ALJ's credibility assessment in the second step of the sequential evaluation process, highlighting that this is a de minimis test that typically precedes the ALJ's credibility evaluation.  Dkt. 8 at 3-4, 12; *see also* Dkt. 11 at 3.  The Court agrees.  Moreover, here, the ALJ's credibility conclusions are closely linked with the other issues that Plaintiff explicitly raised, allowing the Court to consider the matter as it relates to the ALJ's step two and medical evidence findings.  *See Albertson v. Berryhill*, 723 F. App'x 511 (9th Cir. 2018) (Ninth Circuit reached credibility findings despite plaintiff's failure to raise the issue on appeal, noting credibility was inherently tied to an issue plaintiff properly raised); *see also Beatty v. Colving*, 2016 WL 4528960, at *4 (D. Nev. Aug. 29, 2016) (reversing ALJ where plaintiff did not challenge credibility findings and the ALJ failed to provide clear and convincing reasons to discount claimant's testimony).

To assess a claimant's credibility, the ALJ must follow a two-step analysis.  First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged symptoms.  *Molina*, 674 F.3d at 1112-13.  If such evidence is presented and there is no evidence of malingering, then the ALJ must give specific, clear, and convincing reasons for rejecting claimant's testimony about the severity of her symptoms.  *Id.*

The Ninth Circuit has ruled that a claimant does not need to prove their impairment could cause the severity of their symptoms, but only that it could cause some degree of the symptom.

1    *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quotations and internal citations

2    omitted).  Nor must a claimant provide objective medical evidence of the pain or fatigue itself, or

3    its severity.  *Id.*  Unless the ALJ finds evidence of malingering, they can only deem a claimant

4    not credible by making specific credibility findings and stating clear and convincing reasons for

5    each.  *Smolen*, 80 F.3d at 1281;  *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th

6    Cir. 2006).  This is not an easy requirement to meet: "[t]he clear and convincing standard is the

7    most demanding required in Social Security cases."  *Garrison*, 759 F.3d at 1015 (citing *Moore v.*

8    *Comm'r of Soc. Sec. Admin.*, 278 F.3d920, 924 (9th Cir.2002)).

9            In this case, the ALJ failed to properly consider Plaintiff's impairments of POTS, chronic

10   fatigue, and fibromyalgia at step two, making the application of the first prong of the two-step

11   test erroneous.  As to the second prong, the ALJ did not find evidence of malingering and

12   determined that Plaintiff's statements were "not entirely consistent" with her reports to medical

13   providers, unremarkable clinical exam findings, conservative treatment, and activities.  AR 916-

14   20.  However, as explained *infra*, the ALJ's characterization of the record and Plaintiff's

15   activities was also erroneous and thus does not constitute clear and convincing evidence that

16   Plaintiff's testimony should not be credited.  *See* C(4)-(5).  This is consistent with the legal

17   standard in the Ninth Circuit requiring the ALJ to provide clear and convincing evidence to

18   discount a claimant's testimony.  *See Garrison*, 759 F.3d at 1015.  Because of the ALJ's failure

19   to apply the proper standard of proof before discrediting Plaintiff's testimony at step two, the

20   Court finds that the ALJ committed reversible legal error in its adverse credibility determination.

21       **C.**     **The ALJ Erred in Evaluating Medical Opinions**

22           Plaintiff contends the ALJ erred by discounting the opinions of treating provider Dr.

23   Parrish and examining provider Dr. Ronning and giving "great weight" to the opinion of

1    non-examining provider Dr. Stuart.  Dkt. 8 at 8-16.  The Commissioner argues the ALJ

2    reasonably rejected the opinions for specific and legitimate reasons.  Dkt. 10 at 6-13.

3            Because Plaintiff applied for benefits before March 27, 2017, prior regulations apply to

4    the ALJ's evaluation of medical opinion evidence.[4]  Under the applicable regulations, where not

5    contradicted by another doctor, a treating doctor's opinion may be rejected only for "clear and

6    convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citation omitted).

7    Where contradicted, a treating doctor's opinion may not be rejected without "'specific and

8    legitimate reasons' supported by substantial evidence in the record for so doing."  *Id.* at 830-31.

9                    *1.      Treating Provider – Rebecca Parrish, M.D.*

10           In March 2023, Dr. Parrish provided an opinion evaluating Plaintiff's functional

11   limitations.  AR 5293-99.  Dr. Parrish opined her diagnoses of cervical spondylosis, chronic low

12   back pain, and small fiber neuropathy caused significant limitations, which were ongoing and

13   would last at least twelve months.  AR 5293, 5297.  Dr. Parrish indicated: (1) she could sit only

14   three hours in an eight hour workday, could stand or walk a total of thirty minutes during a

15   workday, and could occasionally lift or carry no more than ten pounds (2) the degenerative

16   changes in her cervical spine caused marked limitations in both her upper extremities with

17   grasping, fingering, and overhead reaching within a work environment; (3) her limitations

18   precluded her ability to push, pull, kneel, bend, or stoop on a sustained basis; (4) she could not

19   tolerate any level of stress because of her chronic neck and lumbar pain, and chronic tingling in

20   her feet; (5) her symptoms would likely increase in a competitive work environment; (6) she

21   required four unscheduled fifteen-minute breaks per workday; and (7) she would miss at least

22

23   ───────────────────────────────
     [4] If a claimant submits two applications for benefits - one before the regulations were changed and one
     after - and the second application is merged with the first one (as in this case), the determinative date is
     the first application's filing date, not the onset date.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.

three workdays per month.  AR 5295-98.  Dr. Parrish provided context about the length of her

relationship as Plaintiff's treating provider and referenced objective medical evidence which

supported her opinion.  AR 5293-94 (referencing February 2020 cervical spine MRI

(AR 1363-64); July 2020 cervical spine imaging (AR 1507-15); April 2022 lumbar MRI

(AR 3944-52); and November 2017 skin biopsy for small fiber neuropathy (AR 1784-85, 1798,

1805, 1811).

### 2.   *Examining Provider – Arnold Ronning, M.D.*

In July 2021, Dr. Ronning performed a physical examination and provided an evaluation

of Plaintiff's functional limitations.  AR 2227-36.  Dr. Ronning indicated: (1) she could only

walk or stand for four hours in an eight hour day, but not greater than twenty minutes walking

and thirty minutes standing; (2) she could sit for six hours in an eight hour day, but not longer

than thirty minutes; (3) she could not lift or carry with her left arm, but could occasionally carry

up to ten pounds – and rarely up to twenty pounds – with her right arm; and (4) heavier and

sustained lifting would irritate her symptoms.  AR 2235-36.  Dr. Ronning's opinion included a

detailed summary of Plaintiff's medical history and physical observations which supported his

opinion:  Plaintiff had reduced range of motion in her neck and left arm; diminished sensation in

some of her toes; and five tender fibromyalgia trigger points.  AR 2234.

### 3.   *Non-Examining Consultant – Robert Stuart, M.D.*

In September 2021, Dr. Stuart reviewed the medical record and provided a "Physical

Residual Functional Capacity" form which evaluated Plaintiff's limitations.  AR 1021-22,

1033-34.  Dr. Stuart indicated: (1) she could occasionally lift and/or carry twenty pounds and

frequently lift and/or carry ten pounds; (2) she could sit or stand and/or walk for six hours in an

eight-hour workday; (3) she could never climb ladders, ropes, or scaffolds – but was otherwise

1    unrestricted by postural limitations; and (4) she had no manipulative limitations.  AR 1021-22.

2    Dr. Stuart's opinion included a brief explanation which broadly referenced inconsistencies with

3    the record.  AR 1022.

4               4.       *Inconsistencies with the Record*

5          The ALJ gave "little weight" to Dr. Parrish's opinion, finding the opinion overly relied

6    on Plaintiff's reports of back pain and lower extremity pain in evaluating her limitations, which

7    were "not consistent with the longitudinal record."  AR 921.  The ALJ found Dr. Ronning's

8    opinion merited "little weight" for the same reasons.  AR 923.  As explained *infra*, substantial

9    support does not support the ALJ's findings.

10         The ALJ cited treatment notes and explained they showed Plaintiff's lower extremity

11   pain improved and symptoms stabilized with conservative treatment.  AR 921 (citing AR 1526,

12   1533, 1538 (pain improved with treatment); 1330, 1503 (symptoms stable with treatment)); *see*

13   *also* AR 923 (discounting Dr. Ronning's opinion for same reasons).  In contrast to the ALJ's

14   finding, however, treatment notes report Plaintiff experienced "ongoing symptoms," her pain

15   medication was the "only thing that really helps [her, and] allows her to sleep" (AR 1533, 1538),

16   and although her "pain is stable" she has "ongoing burning [pain] on [the left] side of her neck."

17   AR 1526.  These notes indicate she dealt with ongoing pain, which conservative treatment did

18   not improve and for which pain medication was the only way she could sleep.  As to Plaintiff's

19   allegedly stable symptoms, the ALJ provided one record indicating her "thyroglobulin has been

20   unremarkable and ultrasounds have been stable," which is unrelated to any of her alleged

21   limiting lower extremity symptoms (AR 1330); and a second which reported her "foot pain [,

22   l]ightheadedness and POTS is stable" without any discussion of non-foot related lower extremity

23   symptoms.  AR 1503.  Substantial evidence does not support the ALJ's findings.

1       The ALJ found Plaintiff's back pain improved with conservative treatment, consisting

2 primarily of physical therapy.  AR 921 (citing AR 5136, 5145, 5153, 5155, 5160-61); *see also*

3 AR 923 (discounting Dr. Ronning's opinion for same reasons).  The treatment notes show

4 Plaintiff "responded well to [exams] today, with reduced pain symptoms" but had difficulty

5 flexing her spine or tolerating general activity.  AR 5136; *See also* AR 5145, 5153, 5155 (same).

6 Plaintiff's discharge summary further indicates she reached only forty percent of her stated goals

7 for resolving issues with her lower extremity tightness and failed to make any progress resolving

8 her lumbar spine symptoms.  AR 5160-61.  The record thus reflects that conservative treatment

9 and physical therapy were unable to resolve Plaintiff's back pain, in contrast to the ALJ's

10 findings.

11       The ALJ found Plaintiff's "largely unremarkable" clinical presentation, specifically her

12 "normal gait and normal lower extremity strength, balance, coordination, reflexes, and muscle

13 bulk/tone," inconsistent with Dr. Parrish's opinion.  AR 921; *see also* AR 923 (discounting Dr.

14 Ronning's opinion for same reasons).  The cited records, which report "degenerative changes at

15 multiple levels" and "moderately severe root entry and foraminal stenosis" (AR 1511-12);

16 anxious mood, behavior and affect (AR 2086); physical therapy ineffective (AR 2286); and

17 indicate pain medications and activity modification have "not provided ongoing relief" for neck

18 and lumbar pain (AR 4922-24); do not provide substantial evidence for the ALJ's findings, and

19 in fact contradict it.  Moreover, the ALJ cited records including Dr. Ronning's opinion, which

20 opined significant limitations for Plaintiff (AR 2228-36), and a note which reported no "evidence

21 of hardware complication" in Plaintiff's disk replacement.  AR 2374.  An ALJ may not reject

22 evidence based on an inaccurate portrayal of the record.  *Reddick v. Chater*, 157 F.3d 715,

23 722-23 (9th Cir. 1998) (ALJ's decision unsupported by substantial evidence where "paraphrasing

1   of record material is not entirely accurate regarding the content or tone of the record.").   It is true

2   that the ALJ cited some records showing normal mental exam and gait findings (AR 1331, 1505,

3   1538-49, 1559-60, 2706-08, 3041, 4071-76, 4372, 4421, 5017-18, 5037), but such observations

4   must be "read in context of the overall diagnostic picture" the provider draws.  *Ghanim v.*

5   *Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  The fact that a person has "occasional

6   symptom-free periods" is not inconsistent with finding that the person is too disabled to function

7   in the workplace.  *Lester*, 81 F.3d at 833.

8           The ALJ also found Plaintiff's level of activity – namely her testimony that she could

9   walk one mile – inconsistent with the severity of limitations Dr. Parrish opined.  AR 921; *see*

10  *also* AR 923 (discounting Dr. Ronning's opinion for same reasons).  As before, the ALJ's

11  description of the record is not entirely accurate.  Plaintiff testified her "small fiber neuropathy"

12  caused "difficulty in walking" and made her legs swell up and feet go numb.  AR 944.  She

13  explained she randomly experienced painful "pins and needles," and clarified the furthest she

14  could walk was "probably" a mile with "breaks along the way."  AR 944.  That Plaintiff could

15  *probably* walk one mile, with multiple breaks and no limitations, is not inconsistent with Dr.

16  Parrish's opinion that Plaintiff could only stand or walk a total of thirty minutes in a workday.

17  Nor is it inconsistent with the other limitations Dr. Parrish or Dr. Ronning assessed.

18          Finally, the ALJ found Dr. Parrish's assessment of severe limitations due to neck and

19  upper extremity pain inconsistent with Plaintiff's "ongoing improvement."  AR 921; *see also*

20  AR 923 (discounting Dr. Ronning's opinion for same reasons).  The ALJ explained that

21  Plaintiff's neck and upper extremity symptoms "largely resolved after her June 2021 cervical

22  spine surgery," and "after a short course of post-surgical physical therapy," she "exhibited

23  normal strength, coordination, and range of motion in the upper extremities."  AR 921 (citing

AR 4066-76).  Moreover, "by September 2021, her symptoms had largely resolved" and her "clinical examination was largely unremarkable, reflecting normal neck range of motion and normal upper extremity strength and sensation."  AR 921 (citing AR 2368-69).  The ALJ's summary of these records are not supported by substantial evidence.  The normal findings the ALJ relied on from June 2021 relate to whether Plaintiff could be discharged home. AR 4066-76.  The notes show that Plaintiff transferred herself from a bed to a chair, walked four hundred feet, and used twelve stairs with a handrail, but do not help explain her physical limitations in a competitive work environment.  AR 4075.  Similarly, although progress notes from September 2021 reflect some normal findings and improvement in Plaintiff's upper extremities, her provider reported significant concern with her "low back and intermittent right lower extremity pain that has been ongoing for 30 years" and indicated her pain was aggravated by sitting.  AR 2368.  These records are not inconsistent with the medical opinions.

An ALJ may reject a medical opinion that is contradicted by objective evidence in the medical record.  *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).  In this case, however, Plaintiff's primary treating doctor addressed why largely unremarkable clinical findings did not contradict opinions of severe limitations.  As Dr. Parrish explained, Plaintiff's chronic neck and lumbar pain, and chronic tingling in her feet, prevented her from tolerating even low stress; her symptoms would flare up in a work environment; and her degenerative spine issues caused marked limitations in her upper extremities.  Dr. Parrish also indicated Plaintiff's issues had no connection with emotional factors and that she was not a malingerer.  AR 5298.  The ALJ did not address Dr. Parrish's explanations or explain why the doctor's interpretation of the medical record was incorrect.  It is insufficient for an ALJ to simply disagree with a doctor.  *Reddick*, 157

1   F.3d at 725 ("The ALJ must do more than offer his conclusions.  He must set forth his own

2   interpretations and explain why they, rather than the doctors', are correct.").

3                  5.      *Insufficient Support in the Record*

4          The ALJ explained that while Dr. Parrish supported her opinion with imaging results,

5   "the only other support she provided was her recitation of the [Plaintiff's] subjective pain

6   report."  AR 921.  The ALJ found this "insufficient to support the rather profound limitations

7   [she] assessed."  AR 921.  In evaluating Dr. Parrish's opinion for supportability, the ALJ

8   committed a variety of important errors.  To start, the ALJ entirely ignored most of Dr. Parrish's

9   extensive treatment records, including countless reports from other attending providers, dozens

10  of medical test results, and Dr. Parrish's own treatment notes.  *See e.g.*, AR 1318-2190,

11  2270-2880, 2913-3395, 3930-5121.  The ALJ failed to recognize the opinion was based on Dr.

12  Parrish's significant years of experience treating Plaintiff and objective medical records and was

13  entitled to more weight than an otherwise unsupported form would merit.  The ALJ also failed to

14  compare Dr. Parrish's records to other medical evidence and thus failed to recognize that no

15  other treating or examining physician disagreed with Dr. Parrish's findings.  Notably, Dr. Stuart,

16  the non-examining consultant whose views differed from the treating and examining doctors',

17  lacked access to Plaintiff's full treatment records and wrote his report in September 2021, which

18  was several years before Dr. Parrish provided her opinion.  In the same way, the ALJ failed to

19  evaluate Dr. Parrish's records for internal consistency or inconsistency in her description of

20  Plaintiff's symptoms, an evaluation that would have unearthed consistent reports of chronic pain

21  and numbness radiating from her back and neck into her extremities and causing her significant

22  limitations.  Finally, the ALJ failed to afford the deference to which Dr. Parrish was entitled as

23

Plaintiff's treating physician, and generally mischaracterized the record in evaluating the medical evidence for consistency.

As to the supportability of Dr. Ronning's opinion, the ALJ explained the attribution of various limitations due to diagnoses of back pain, neck pain, lower extremity neuropathy, and POTS syndrome lacked objective support in the record and were taken out of the context that Plaintiff was recovering from surgery at the time.  AR 922-23.  In pertinent part, the ALJ found "Dr. Ronning did not record objective finding[s] to establish a diagnosis of POTS" (AR 922), but otherwise failed to contest the support for limitations attributed to Plaintiff's diagnoses of back pain, neck pain, and lower extremity neuropathy.  AR 923.  The ALJ dismissed Plaintiff's alleged limitations from these symptoms solely because they were inconsistent with the record, which as explained *supra*, was error.  Moreover, Dr. Ronning supported his opinion with a detailed discussion of Plaintiff's medical history and his physical observations during exam.  AR 2234.  It is true Dr. Ronning's opinion occurred while Plaintiff was recovering from surgery, which he addressed in the opinion, but this is not a valid reason for discounting the support he provided.  AR 2235.

In sum, the ALJ failed to give specific, clear, and convincing reasons for rejecting the medical opinions provided by Plaintiff's treating provider, Dr. Parrish, or examining provider, Dr. Ronning.  In fact, the reasons given by the ALJ – Plaintiff's doctors overly relied on her self-reports, she had minimal limitations, and her clinical findings were normal – are plainly belied by the record and rest upon mischaracterizations of the doctors' opinions.  Because the ALJ provided no valid reason supported by substantial evidence to discount the doctors' opinions, the Court concludes the ALJ erred by discounting them.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

D.      Scope of Remand

Plaintiff argues the Court should remand for an award of benefits because the record is complete and the improperly discounted opinions support a finding of disability.  Dkt. 8 at 18. The Commissioner contends that even if the ALJ erred, the record has outstanding conflicts which warrant remand.  Dkt. 10 at 17-18.

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits: (1) has the record been fully developed such that further administrative proceedings would serve no useful purpose; (2) has the ALJ failed to provide legally sufficient reasons for rejecting evidence from plaintiff's testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, would the ALJ be required to find plaintiff disabled on remand.  *Garrison* at 759 F.3d 1020.

The Court concludes that each of the credit as true factors is satisfied and thus that remand for the calculation and award of benefits is warranted.  First, there is no need to develop the record or convene further administrative proceedings.  Two administrative judges conducted hearings and the record is complete.  It totals thousands of pages and includes treatment notes documenting dozens of doctors' visits addressing Plaintiff's medical conditions within the relevant period.  The record also reflects Plaintiff's testimony before the ALJ and her responses to numerous questionnaires about her physical and mental limitations, all of which corroborate her impairments.  Dr. Parrish's opinion is developed and substantiated by her long-term treatment relationship with Plaintiff and the VE specifically testified regarding the inability of an individual with Plaintiff's limitations as described by Dr. Parrish to sustain work.

1    Although the Commissioner argues further proceedings would serve the purpose of

2  allowing the ALJ to revisit the medical opinions he rejected for legally insufficient reasons (Dkt.

3  10 at 18), our precedent and the objectives of the credit-as-true rule preclude the argument that a

4  remand for the purposes of allowing the ALJ to have a second – or in this case third – chance

5  qualifies as a remand for "useful purpose" under the first part of credit-as-true analysis.  *See*

6  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide

7  the issue again would create an unfair 'heads we win; tails, let's play again' system of disability

8  benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The

9  Commissioner, having lost this appeal, should not have another opportunity to show [Plaintiff] is

10  not credible any more than [Plaintiff], had he lost, should have an opportunity for remand and

11  further proceedings to establish his credibility." (citation omitted)).  Allowing remand for further

12  proceedings because the ALJ failed to provide any legally sufficient reasons for discounting

13  evidence would contribute to waste and disincentivize the ALJ's obligation.  This is the essence

14  of the "heads we win; tails, let's play again" adjudication *Benecke* cautioned against. 379 F.3d at

15  595.

16    The other two prongs of the *Garrison* test are also satisfied.  The ALJ gave "great

17  weight" to Dr. Stuart's September 2021 opinion and explained it was the "most comprehensive

18  review of the evidence," and "well supported because the consultants are familiar with Social

19  Security disability criteria, they reviewed the record, and they pointed to evidence of record to

20  substantiate their opinions."  AR 920; *see also* AR 923 (finding Dr. Stuart provided "more

21  reliable assessment" than that provided by examining provider Dr. Ronning).  Dr. Stuart's

22  opinion conflicts with Dr. Parrish's opinion that Plaintiff's physical impairments were disabling

23  and she was unable to work without significant accommodations.  AR 5293-99.  Regulations and

1    case law applicable to Plaintiff's application require treating physicians' opinion be given greater

2    weight than non-examining doctors' opinions.  *Garrison*, 759 F.3d at 1012 ("[T]he opinion of a

3    treating physician is . . . entitled to greater weight than that of an examining physician, [and] the

4    opinion of an examining physician is entitled to greater weight than that of a non-examining

5    physician.").  The ALJ failed to follow the appropriate methodology for weighing a treating

6    physician's medical opinion, and there is no legitimate reason provided for rejecting Dr.

7    Parrish's opinions.  If credited as true, Dr. Parrish's opinion establishes Plaintiff is disabled.

8            The Vocational Expert ("VE") testified if Plaintiff could not consistently complete an

9    eight-hour day, required four additional unscheduled fifteen-minute breaks during a workday; or

10   would miss up to three days of work a month, she would be precluded from employment based

11   on the ALJ's RFC assessment.  AR at 955-56.  The Commissioner argues "the unchallenged

12   reasons provided by the ALJ for discounting [Plaintiff's subjective complaints] also forecloses

13   [her] preferred remedy", but this is unavailing.  Dkt. 10 at 18 (citing *Dominguez v. Colvin* 808

14   F.3d 403, 409 (9th Cir. 2015)).  In *Dominguez*, the Ninth Circuit remanded for further

15   proceedings because: (1) the treating doctor's opinions were in conflict with his treating notes

16   and several examining providers opinions; (2) the ALJ made a valid adverse credibility

17   determination, which was supported by skepticism from providers towards the plaintiff's claims;

18   and (3) there were several outstanding factual issues and gaps in the record for the ALJ to

19   resolve.  *Id.* at 406-10.  In contrast, in this case, Dr. Parrish's opinions and treatment notes are

20   internally consistent with her observations and with those of other examining providers; Dr.

21   Parrish reported she was not skeptical of Plaintiff's complaints; and the record is complete.

22   Accordingly, no material conflict remains to be resolved.  Because Dr. Parrish's opinion outlined

23

1    physical limitations which prevent Plaintiff from doing any full-time work, she is entitled to

2    benefits. *Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017).

3            Finally, there is not "serious doubt" based on "an evaluation of the record as a whole"

4    that Plaintiff is, in fact, disabled, given her severe impairments of hypothyroidism status post

5    thyroid cancer surgery; neuropathy; cervical and lumbar degenerative disk disease; obesity; and

6    depressive disorder; the combination of other conditions from which she suffers, including

7    POTS, chronic fatigue, and fibromyalgia; and her lack of transferable work skills.  The Court's

8    conclusion follows directly from the analysis of the ALJ's errors and the strength of the

9    improperly discredited evidence, credited as true: a treating provider and an examining provider

10   deemed Plaintiff to be disabled because of an array of severe physical impairments, and a VE

11   explicitly testified that a person with the impairments described by Plaintiff's medical caretakers

12   could not work.  The Commissioner simply repeats the arguments that have been made, asserting

13   evidence from the providers who treated and examined Plaintiff should not be given much

14   weight and Plaintiff's testimony should not be accepted.  As before, the Commissioner dwells on

15   a handful of records showing slight improvements in Plaintiff's condition.  At no point does the

16   Commissioner advance an argument that the ALJ overlooked anything in the record and explain

17   how that evidence undercuts Plaintiff's claim to be disabled.  The record reflects that Plaintiff

18   has been afflicted with a number of severe physical impairments since the onset date.  Even if

19   these symptoms have occasionally abated for brief periods of time – while in treatment and

20   reducing stressors – the Court, like her numerous medical providers, sees no reason to doubt that

21   she has been incapable of work since the amended onset date of disability.

22           In addition, the "exceptional facts" of this case, *Terry v. Sullivan*, 903 F.2d 1273, 1280

23   (9th Cir. 1990), strongly favor remand for immediate payment of benefits.  Plaintiff is 52 years

ORDER REVERSING THE COMMISSIONER'S
DECISION - 20

1    old and first sought benefits nearly a decade ago; her disability was triggered when she was

2    exposed to chemicals while working at a print shop in 2013.  AR 563, 707.  "[F]urther delays at

3    this point would be unduly burdensome."  *Terry*, 903 F.2d at 1280 (exercising discretion to order

4    payment of benefits where plaintiff was 64 years old and applied for benefits four years earlier,

5    despite lack of development in the record about a job plaintiff was allegedly qualified for); *see*

6    *also Smolen*, 80 F.3d at 1292 (remanding for benefits where plaintiff "already waited over seven

7    years for her disability determination"); *see also Trevizo*, 871 F.3d at 682 83 (remanding for

8    benefits where plaintiff was 65, sought benefits seven years prior, and claimed disability ten

9    years prior, despite some unexplained non-compliance with medication).  Further, courts in the

10   Ninth Circuit have regularly relied on medical opinion evidence to remand for an award of

11   benefits, even where Plaintiff failed to challenge the ALJ's credibility findings.  *See, e.g.*,

12   *Fulsaas v. Berryhill*, 2018 WL 2090475 (D. Or. May 4, 2018) (remanding for an immediate

13   award of benefits despite the fact that plaintiff did not challenge the ALJ's credibility finding);

14   *Connie T. v. Berryhill*, 2019 WL 2419461 (D. Or. Jun. 10, 2019) (remanding for an immediate

15   award of benefits based on medical opinion evidence without reaching the question of plaintiff's

16   subjective symptom testimony); *Michael P. v. Berryhill*, 2019 WL 3210096, at *2 (D. Or. June

17   27, 2019) (remanding for benefits without reaching question of plaintiff's credibility).  Taking

18   everything into account, Plaintiff satisfies all three conditions of the credit as true rule and a

19   careful review of the record discloses no reasons to seriously doubt that she is, in fact, disabled.

20   Because the evidence establishes Plaintiff would be unable to maintain employment while

21   managing her pain and physical impairments, remand for further proceedings serves no useful

22   purpose.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for an award of benefits under sentence four of 42 U.S.C. § 405(g).

Dated this 2nd day of May, 2024.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S
DECISION - 22